UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 10bk44866 |
| | ) | |
| Richard J. Klarchek, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |
| In re: The Klarchek Family Trust, | ) | Adversary No. 13ap01048 |
| | ) | |
| and | ) | |
| | ) | |
| Richard J. Mason, not individually but as chapter 7 trustee of the bankruptcy estate of Richard J. Klarchek, | ) | |
| | ) | |
| Respondent/Intervenor and Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| John Costello, James Eliades and John Loguidice, not individually, but as trustees of the Klarchek Family Trust, | ) | |
| | ) | |
| Petitioners. | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matters before the court are Richard J. Mason's (the "Chapter 7 Trustee") Motion to Enforce the Automatic Stay as Against the Klarchek Family Trust (the "Stay Enforcement Motion") and the Motion to Abstain or, Alternatively, Remand Proceeding (the "Remand Motion" and together with the Stay Enforcement Motion, the "Motions") brought by John Costello, James Eliades and John Loguidice (the "Petitioners"), not individually but as trustees of the Klarchek Family Trust (the "Trust"). Each of the Motions relates to Circuit Court of Cook County Case No. 2013 CH 10658 (the "Dissolution Proceeding"), a postpetition action to dissolve the Trust brought without stay relief in the above-captioned proceedings and subsequently removed to this court. After review of the Motions and conducting several hearings on the matter, the court finds that, under the facts unique to this case, the commencement of the Dissolution Proceeding violated the

automatic stay in this matter and the Dissolution Proceeding is, therefore, void as a matter of law. The Stay Enforcement Motion will, therefore, be granted. While the state court is the tribunal vested with the authority to dissolve the Trust and thus the best forum to hear questions regarding the propriety of dissolution, the request for abstention or remand is moot as the underlying proceeding is void. The Remand Motion must therefore be denied.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). The automatic stay is a creation of federal statutory law, extant only in a bankruptcy case. As such, any motion seeking relief from, or redress regarding, the automatic stay, by definition arises under the Bankruptcy Code and is therefore a core proceeding within this court's statutory and constitutional authority. 28 U.S.C. § 157(b)(2)(A), (G); *In re Suburban West Properties, LLC*, 504 B.R. 477, 479 (Bankr. N.D. Ill. 2013) (Barnes, J.). A motion for remand of a proceeding removed to the bankruptcy court is also a matter arising purely within the context of a bankruptcy case, *see* Fed. R. Bankr. P. 9027(d), and therefore is also a core proceeding within this court's statutory and constitutional authority. 28 U.S.C. § 157(b)(2)(A).

## PROCEDURAL HISTORY

In considering the Motions, the court has considered the arguments of the parties at the November 13, 2013, January 8, 2014 and January 14, 2014 hearings on the Motions, and has reviewed and considered the following filed documents in the main case and adversary proceeding:

(1) Notice of Removal of Civil Action [Adv. Dkt. No. 1];

(2) The Remand Motion [Adv. Dkt. No. 11];

(3) Trustee's Response in Opposition to Motion to Abstain or, Alternatively, Remand Proceeding [Adv. Dkt. No. 14];

(4) Reply in Support of Motion to Abstain or, Alternatively, Remand Proceeding [Adv. Dkt. No. 17];

(5) The Stay Enforcement Motion [Dkt. No. 620];

(6)     Order Setting Briefing Schedule and Hearing Date on Motion for Abstention and Motion to Enforce Automatic Stay Against Klarchek Family Trust [Dkt. No. 623];[1]

(7)     Response to Trustee's Motion to Enforce the Automatic Stay as Against the Klarchek Family Trust [Dkt. No. 629]; and

(8)     Reply in Support of Trustee's Motion to Enforce the Automatic Stay as Against the Klarchek Family Trust [Dkt. No. 633].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case and adversary proceeding, the court has taken judicial notice of the contents of the dockets in these matters. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket). In so doing, the court also takes judicial notice of the docket in the Dissolution Proceeding, properly now part of this court's docket on removal.

## BACKGROUND

On or about October 6, 2010, Richard J. Klarchek (the "Debtor"), voluntarily commenced a case under chapter 11 of the Bankruptcy Code. As chairman, president and CEO of Chicago-based Capital First Realty Inc., the Debtor's prepetition business was focused on the real estate industry, in part by holding a portfolio of manufactured-housing parks. The Debtor's business was, prior to 2007, by many accounts successful, permitting the Debtor, among other things, to afford enough financial backing to Loyola University Chicago to have its new library named after him. But as with many real estate endeavors, the Debtor's business took a turn for the worse with the 2007 industry-wide collapse. That, in turn, had a clear effect in the Debtor's personal fortunes. In his bankruptcy schedules, the Debtor indicated that at the time of commencing his bankruptcy case in 2010, he possessed over $19 million in assets, but had at the same time nearly $53 million in claims against him.

But it is not the Debtor's business, *per se*, that is the topic of the disputes presently before the court. It is instead the Debtor's relationship to the family trust – the Trust – that he created in 2001 that focuses our inquiry.

Nearly two years after the bankruptcy case was commenced, it was converted to one under chapter 7 of the Bankruptcy Code.[2] The Chapter 7 Trustee thereafter appointed set about investigating the Debtor's prepetition transactions with his businesses, his family and, at issue here, the Trust. On April 5, 2013, the Chapter 7 Trustee sought and shortly thereafter received permission of the court to conduct an examination of the Trust pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and individually, Rule ___).

---

[1]     A second scheduling order, Docket No. 624, was mistakenly entered on this same day, but provided for the same deadlines as Docket No. 623.

[2]     The undersigned was assigned to the case after it had been converted. The cause of the conversion is not immediately evident from the docket.

3

On April 22, 2013, however, less than 24 hours before this court approved the Rule 2004 examination, the Petitioners commenced the Dissolution Proceeding by filing a "Petition of John Costello, James Eliades and John Loguidice to Dissolve the Klarchek Family Trust" (the "Petition") in the Circuit Court of Cook County. In exhibits to the Petition, the Petitioners set forth nearly $13.5 million in estimated claims known to have been asserted against the Trust, the largest of which – $11 million – was set forth in the name of the Chapter 7 Trustee. The exhibits made clear that the amounts contained therein were not admissions. On the other hand, the Chapter 7 Trustee's subsequent answer and counterclaims in the Dissolution Proceedings assert that the estate's claims are potentially greater than that. These filings allege that the estate is owed both the unpaid portion of $11 million in notes owed by the Trust to the Debtor as well as the unpaid portion of $7.8 million in annual annuity payments owed to the Debtor under a sale agreement. That sale agreement was used by the Debtor to partially fund the Trust, transferring assets of an estimated value of over $72 million.

Despite that fact that the Petitioners had full knowledge of the existence of this bankruptcy case and the Chapter 7 Trustee's investigation, the Petitioners did not seek relief from the automatic stay to bring the Petition, and have not since sought to have the stay annulled.

The Petitioners would have this court believe that the timing of the commencement of the Dissolution Proceeding is mere coincidence, that the Dissolution Proceeding is simply the logical next step in winding up a trust that has ceased to fulfill its purpose. But the timing and contents of the Petition belie that assertion.

As noted above, though the Trust had at that point been in existence for more than 12 years, the Petition was filed less than one day before this court heard and approved the Chapter 7 Trustee's Rule 2004 examination request. Yet no mention of the Chapter 7 Trustee's investigation and the pending Rule 2004 examination request was made to the state court in the Petition. Further, while the schedule attached to the Petition demonstrates that the estate's claim is, by an order of magnitude, the largest claim against the Trust, other than being set forth on the schedule, neither the existence of the bankruptcy case or the Chapter 7 Trustee's investigation is disclosed to the state court. The Petition does, however, clearly anticipate both, seeking permission of the state court to bless that "establishment of an escrow funded for the protection of the Petitioners in relation to an existing claim of TCF Bank against them *and any further claims which may be brought against them as a result of their service as Trustees of the Trust.*" While this artfully avoids mentioning the bankruptcy case and the investigation of the Chapter 7 Trustee, the purpose of this request is clear.

The Petition purports to proceed under the virtual representation provisions of Illinois' enactment of the Uniform Trust Act. 760 ILCS 5/16.1. While the Petition clearly states that the Trust is hopelessly insolvent, no mention of the propriety of proceeding by consent under this statute as to the affected creditors is given. Instead, the Petitioners pray that the state court terminate the Trust, accept a final account and the transactions reflected therein, find that preceding under the virtual representation statute is appropriate and find that "the adjudications made in connection with [the Petition] *are binding upon … all persons and entities with actual or constructive notice of these proceedings.*"

As the Chapter 7 Trustee is among those the Petitioners propose in the Petition to give notice to, the Petition therefore seeks to bind the bankruptcy estate to the state court's determinations even though Illinois law does not appear to permit the use of the virtual

4

representation process to bind creditors. *See, e.g.*, 760 ILCS 5/16.1(a)(1) (applying virtual representation statute to "another individual having a substantially identical interest"); *Est. of Mayfield v. Est. of Mayfield*, 680 N.E.2d 784, 787 (Ill. App. 4th Dist. 1997) (virtual representation is applicable to "another party having a substantially identical interest in the proceedings"); *Ludwig v. Sommer*, 53 Ill. App. 2d 72, 76 (Ill. App. 3rd Dist. 1964) (finding that the concept of virtual representation as it existed in common law at that time could not be used as to creditors against whom trust was at odds).

Further, the Chapter 7 Trustee has made allegations in each of the Motions of a troubling nature. The Chapter 7 Trustee alleges that the Trust has engaged in postpetition transactions with the Debtor's family members with the apparent attempt to distribute its remaining assets to them, rather than pay its outstanding legal obligations. By asking the state court to find the Trust's activities as appropriate without any meaningful disclosure in that regard, the Petition has all the appearances of seeking to defeat the Chapter 7 Trustee's potential claims through judicial estoppel.

It appears, therefore, that the Petition was both timed and targeted to defeat the Chapter 7 Trustee's investigation. What is not apparent, however, is whether those actions violated the automatic stay. To understand whether this is the case, further discussion is required.

## THE AUTOMATIC STAY

The automatic "functions as 'one of the fundamental protections afforded to debtors by the bankruptcy laws' ...." *Reedsburg Util. Comm. v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 790 (7th Cir. 2011) (*quoting 229 Main St. Ltd. P'ship v. Massachusetts Dept. of Env. Prot. (In re 229 Main St. Ltd. P'ship)*, 262 F.3d 1, 3 (1st Cir. 2001)); *In re Quade*, 482 B.R. 217, 230 (Bankr. N.D. Ill. 2012) (Barnes, J.).

As set forth in section 362 of the Bankruptcy Code, the automatic stay reads, in pertinent part, that:

> Except as provided in subsection (b) of this section, a petition filed under sections 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> ...
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> ....

11 U.S.C. § 362(a)(1), (3).

5

The scope of the automatic stay is intended to be broad. *Grede Foundries*, 651 F.3d at 790; *Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 37 (N.D. Ill. 2010). "The stay is imposed automatically in order to give the bankruptcy court an opportunity to assess the debtor's situation and to embark on an orderly course in resolving the estate. In short, the stay is to ensure the orderly conduct of a judicial proceeding." *U.S. v. Michalek*, 54 F.3d 325, 333 (7th Cir. 1995); *Whitehead & Kales Co. v. Dempster (In re Wiltse Bros. Corp.)*, 361 F.2d 295, 300 (6th Cir. 1966) ("The Bankruptcy Court has jurisdiction to enjoin proceedings in other courts commenced after the filing of the petition in bankruptcy which interfere with the proper administration of the Bankrupt's estate."). As the Seventh Circuit has stated:

> One of the principal means by which bankruptcy law operates is to concentrate, in a single forum, disputes affecting a debtor's solvency and continuing operations. Aggregation prevents efforts by creditors to pick off or affect the disposition of assets in ways that may be privately beneficial but collectively harmful. The bankruptcy judge then serves as dispatcher, resolving the claims that are conveniently treated together while releasing others for decision in their original forums.

*Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994) (internal citations omitted).[3]

It is with this in mind that the court considers the various aspects of the automatic stay that the Chapter 7 Trustee argues are implicated here.

---

[3] It is not lost on the court that this line of precedent leads quickly into another line, which holds that the bankruptcy court has the power – either under section 105 or as an inherent power of the court – to enjoin actions that interfere with the administration of the bankruptcy estate. *See, e.g., Parker v. Goodman (In re Parker)*, 499 F.3d 616, 627 (6th Cir. 2007); *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984); *Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178 (3d Cir. 1982); *Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir. 1970); *Carolina Pipeline Co. v. York County Nat'l Gas Auth.*, 388 F.2d 297, 298 (4th Cir.1967). As the Seventh Circuit has specifically said in this regard:

> In limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently "related to" her own work on behalf of the estate. 28 U.S.C. § 1334(b). The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994), or "the allocation of property among creditors." *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992); *see also* Lawrence P. King, Collier on Bankruptcy ¶ 105[2]; *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997) ("related to" means "likely to affect"). To protect this jurisdiction, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), including a stay. *Zerand-Bernal*, 23 F.3d at 162.

*Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998). There is no question here that the Dissolution Proceeding relates to the Chapter 7 Trustee's work and is likely to affect the bankruptcy estate. However, given the court's findings under section 362, that this issue has not been raised directly by the parties and that bankruptcy courts' authority to act, under section 105 and generally, seem to be under near constant attack, the court sees no reason to consider this line of reasoning.

6

A.  Section 362(a)(1)

The Chapter 7 Trustee first contends that the commencement of the Dissolution Proceeding violated the automatic stay, as by invoking the Illinois virtual representation statute, the Petition commenced an action or proceeding "against the debtor" that was or could have been commenced before the commencement of the case under this title. 11 U.S.C. § 362(a)(1).[4]

At first blush, this does not appear to be the case. As noted above, the virtual representation statute itself does not appear to be intended to be representative of creditors. 760 ILCS 5/16.1(a)(1); *Mayfield*, 680 N.E.2d at 787; *Sommer*, 53 Ill. App. 2d at 76. Not every action involving a debtor is an action "against the debtor" for the purposes of the automatic stay. *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1048 n.3 (7th Cir. 2013).

The Chapter 7 Trustee argues, however, that this court need look the real party in interest to determine if this section is applicable, and directs the court to a Delaware district court case to that effect. *In re Kaiser Aluminum Corp.*, 315 B.R. 655, 658 (D. Del. 2004).

In *Kaiser*, the Delaware district court considered whether a creditor's action against an insurance company, seeking a declaratory judgment regarding the creditor's interest in insurance proceeds in which the debtor claimed a right, violated section 362(a)(1). Even though the debtor was not a named party, the court affirmed the bankruptcy court's determination that the debtor was, in fact, the real party in interest in the matter as it was the estate's interest that was really at stake in the proceeding, stating that:

> The protection of the automatic stay extends to any action or proceeding against an interest of the debtor. The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation.

*Kaiser Aluminum*, 315 B.R. at 658. As the debtor in that matter argued and the district court's ruling confirms, holding to strictly to who the named parties are is elevating form over substance. *Id.* at 657.

The *Kaiser* reasoning has been adopted by a number of courts, including a court within the Seventh Circuit. *See In re Jefferson Cnty., Ala.*, 491 B.R. 277, 296 (Bankr. N.D. Ala. 2013) (adopting *Kaiser* real party in interest reasoning); *Parks v. Progressive N. Ins. Co. (In re Hokanson)*, 383 B.R. 548, 558 (Bankr. D. Kan. 2008) (same); *In re Moore*, 318 B.R. 679, 682 (Bankr. W.D. Wis. 2004) (adopting *Kaiser*, but finding that the debtor was not the real party in interest).

There is no question here that the bankruptcy estate is the real party in interest in the Dissolution Proceeding. The timing of the Dissolution Proceeding's commencement was clearly triggered by the Chapter 7 Trustee's investigation. The bankruptcy estate's potential claims against the Trust far exceed any other claims listed. The Petition clearly seeks to bind the bankruptcy estate to the state court's findings regarding the propriety of the transfers. The Petition further seeks to

---

[4] The Chapter 7 Trustee does not appear to contend that the Dissolution Proceeding is an action "to recover a claim against the debtor that arose before the commencement of the case under this title," as is set forth in the remainder of section 362(a). Accordingly, the court's analysis does not address this factor.

7

use the Trust's assets to allow the Petitioners to defend against the Chapter 7 Trustee's investigation and potential claims. As a result, the court concludes that the bankruptcy estate is the real party in interest in the Dissolution Proceeding, and that, therefore the commencement of the Dissolution Proceeding violated the automatic stay.

B.  Section 362(a)(3)

Even if the court were to conclude that the reasoning in *Kaiser* did not apply, the Chapter 7 Trustee has asserted that the Dissolution Proceeding is also brought in violation of section 362(a)(3), and facts at bar do raise a potential issue in this regard. As section 362(a)(3) expressly applies to property of the estate, the question first becomes what property of the estate, if any, is implicated here.

1.  Property of the Estate

The commencement of a bankruptcy case gives rise to a bankruptcy estate and what is or is not property of that estate is set forth in section 541 of the Bankruptcy Code. Section 541 states that such estate is comprised "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). As has been noted by the Seventh Circuit:

> When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate. Section 541 of the Bankruptcy Code defines "property of the estate" broadly to include all of the debtor's interests, legal and equitable. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 and nn. 8, 9, 103 S. Ct. 2309, 2313 and nn. 8, 9, 76 L. Ed. 2d 515 (1983). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S. Ct. 511, 515, 15 L. Ed. 2d 428 (1966) (bankruptcy estate includes right to refund). A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate. *See In re Neuton*, 922 F.2d 1379, 1382-83 (9th Cir. 1990) (collecting cases). In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541. *In re Anderson*, 128 B.R. 850, 853 (D.R.I. 1991) (citations omitted).

*In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds, Law v. Siegel*, --- U.S. ---, 134 S. Ct. 1188 (2014).

Given the breadth of the foregoing, it is not hard to show that there is indeed property of the estate at issue. There is no question that the notes payable from the Trust to the Debtor are property of the estate. *Telesphere Liquidating Trust v. Galesi*, 246 B.R. 315, 319-20 (N.D. Ill. 2000) ("Courts have often confirmed the obvious proposition that a promissory note payable to the debtor is property of the debtor's bankruptcy estate.") (citing cases). In a similar manner, the Debtor's contractual rights – whether they be under the sale agreement mentioned above or the Debtor's reacquisition rights under the Trust – are also property of the Debtor's bankruptcy estate. *Carlson v. Brand*, 250 B.R. 366, 372-73 (N.D. Ill. 2000) (finding that a bankruptcy lawyer's right to a future contingency fee is a contractual right that is property of the estate).

8

Further, to the extent the Debtor has a right to sue either the Trust or the Petitioners, that chose in action also is property of the Debtor's bankruptcy estate. *Cable v. Ivy Tech State College*, 200 F.3d 467, 472-73 (7th Cir. 1999) ("The phrase 'legal or equitable interests ... in property' includes choses in action and other legal claims that could be prosecuted for benefit of the estate."); *see also Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 596 (7th Cir. 2012) (recognizing property of the estate to include the estate's chose in action against its auditor); *accord Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 473 n.7 (1974) (addressing section 77a of the Bankruptcy Act, the predecessor to section 541, and concluding that "it is settled that 'property' within the meaning of this section includes intangibles such as choses in action.").

As the Dissolution Proceeding does pertain to each of the estate's interests in the foregoing, the court concludes that the base predicate of section 362(a)(3) is met, the court therefore concludes that the commencement of the Dissolution Proceeding does concern property of the estate.

2. Possession of/Control over

Having established that there is property of the estate at issue, the next question presented is whether the commencement of the Dissolution Proceeding constitutes an act "to obtain possession of" or "to exercise control over" such property of the estate. 11 U.S.C. § 362(a)(3).

While there appears to be nothing in the Dissolution Proceeding that would result in possession of either the estate's contractual rights or the estate's choses in action, there is no question here that the intent of the Petitioners in commencing the Dissolution Proceeding when and how they did was an attempt to affect the Chapter 7 Trustee's investigation and prepare for possible resulting litigation. That seems to fall squarely within what might constitute an exercise of control. As the Seventh Circuit has stated, "[s]ection 362(a)(3), however, reaches farther [than the other provisions of section 362], encompassing every effort to 'exercise control over property of the estate.'" *Nat'l Tax Credit Partners*, 20 F.3d at 708.

Again, however, things are not so simple.

As set forth above, there is no question that the automatic stay protects choses of action which are property of a bankruptcy estate. Courts have not shied from holding that actions directly seeking to exercise control over those assets violate section 362(a)(3). *See, e.g., Id.; In re Zarco*, No. 13B25463, --- B.R. ---, 2014 WL 1202570 at *3-4 (Bankr. N.D. Ill. 2014) (Cox, J.) (debtor's attempts to cause creditor to release nonexempt property in chapter 7 case was exercising control over estate property); *see also BRS Associates, L.P. v. Dansker*, 246 B.R. 755, 772 (S.D.N.Y. 2000) ("Where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of bankruptcy, they have the right to do so.").

At that same time, some actions are simply not stayed, even if they might have or might result in a detrimental effect on an estate chose in action. The quintessential example is claims brought by the debtor, instead of claims against the debtor. *Martin–Trigona v. Champion Fed. Savs. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) (claim by the debtors against others is not stayed); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969 (N.D. Ill. 1992) (same); *see also Levitz Furniture Inc. v. T. Rowe Price Recovery Rund, L.P., et al. (In re Levitz Furniture Inc.)*, 267 B.R. 516, 522 (Bankr. D. Del. 2000) ("'[S]ubsection 362(a)(3) does not bar every proceeding hostile to a debtor's claimed interest in property, no matter how tangible, unmatured or unliquidated the

9

debtor's claim, and no matter how indirect the attack upon the estate's interest in property.'") (*quoting Hillblom v. Continental Air Lines Inc. (In re Continental Air Lines, Inc.*), 61 B.R. 758, 778 (Bankr. S.D. Tex. 1986)).

In such actions, the defendants' efforts to defend themselves are also not stayed. *Martin-Trigona*, 892 F.2d at 577 ("There is ... no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it, subsection (a)(3) is no more applicable than (a)(1) is."). Put another way, the automatic stay is intended to operate as a shield, not a sword. *In re Mid-City Parking, Inc.*, 332 B.R. 798, 815 (Bankr. N.D. Ill. 2005) (Cox, J.) (*citing to Winters By & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133, 135 (4th Cir. 1996)).

Further, though the court could find no case law directly on point, it seems tautological that the automatic stay would not prevent a potential defendant to an estate chose in action from filing its own bankruptcy case. *Cf. Blanco River, L.L.C. v. Green*, 457 Fed. Appx. 431, 442 (5th Cir. 2012) (striking as overbroad and unenforceable an injunction that purports to enjoin lawful activity in response to collection activity, such as filing for bankruptcy).

Here it is worth revisiting the Chapter 7 Trustee's argument that an action is against the debtor if the debtor is the "real party in interest." *Kaiser Aluminum*, 315 B.R. at 658. A closer examination of *Kaiser* reveals that the district court's ruling is not so much based on section 362(a)(1), as it is on section 362(a)(3). *Id.* at 659 ("The Bankruptcy Court's ruling is not so much based on the indemnification provision of the settlement agreement as it is on a practical and realistic analysis of whose economic interest is at stake in the [proceeding].").

In one of the cases applying *Kaiser*, the bankruptcy court in Alabama discussed in detail how an action, though it does not name the debtor as a party, is nonetheless subject to the automatic stay when what it seeks may have the effect of collaterally estopping the estate's claims. *Jefferson Cnty*, 491 B.R. at 294-5. As the court there stated, even where such a collateral argument may be unavailing, the estate cannot simply be a bystander in such an action and risk potential prejudice. *Id.* at 295.

As in *Kaiser*, the *Jefferson County* court found that this "real party in interest" context also implicates the sections of 362(a)(3). As in *Jefferson County*, given the potential adverse impact on property of the estate of the action, the action must be stayed pursuant to section 362(a)(3). *Id.*; *see also Kagan v. Saint Vincents Catholic Med. Ctrs. of New York (In re Saint Vincents Catholic Med. Ctrs. of New York)*, 449 B.R. 209, 217-18 (S.D.N.Y. 2011) ("the automatic stay provision is not limited solely to actions against the debtor, but rather bars actions against even against third-parties that would have an adverse impact on the property of the estate"); *In re Howrey LLP*, 492 B.R. 19, 23 (Bankr. N.D. Cal. 2013) (finding a violation of 362(a)(3) for a party to seek a finding in another court that may implicate the estate's cause of actions).

Here, there is no question that the driving force behind timing and content of the Dissolution Proceeding was to thwart the Chapter 7 Trustee's investigation and possible claims. The action was brought one day before the court permitted the Chapter 7 Trustee to examine the Trust, with full knowledge of the existence of its claims. Further, despite existing Illinois case law regarding the ability to bind third parties through virtual representation, the action sought to have the state court's determinations regarding the propriety of distributions from the Trust made

10

binding on all parties who had actual or constructive notice of the Trust. Even without that overreach, the risk of such findings having preclusive effect exists.

As a result of the foregoing, the court concludes that the bringing of the Dissolution Proceeding violated section 362(a)(3) of the Bankruptcy Code.

C.    Void/Voidable

Having found that the bringing of the Dissolution Proceeding violated both section 326(a)(1) and 362(a)(3) of the Bankruptcy Code, the court must now take up the Chapter 7 Trustee's contention that such violation makes the Dissolution Proceeding void.

The question over whether actions taken in violation of the automatic stay are void or are voidable has split the circuits. *See* Barnes, T., *The Plain Meaning of the Automatic Stay in Bankruptcy: The Void/Voidable Distinction Revisited*, 57 OHIO ST. L.J. 291 (1996), and the cases cited therein.

In the Seventh Circuit, there has been no definitive resolution of this issue. In *Matthews v. Rosene*, one panel of the Seventh Circuit stated that "[o]rders issued in violation of the automatic stay provisions of the bankruptcy code, *see* 11 U.S.C. § 362 (1978), ordinarily are void." *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984) (interpreting statutory predecessor of section 362). Whether in reliance on *Rosene* or by independent analysis, courts in this district generally find that stay violations are void. *See, e.g., Garcia v. Phoenix Bond & Indemnity Co. (In re Garcia)*, 109 B.R. 335, 340 (N.D. Ill. 1989), *Richard v. City of Chicago*, 80 B.R. 451, 453 (N.D. Ill. 1987) (affirming bankruptcy court's finding that stay violation is void).

More recently, however, the Seventh Circuit has stated that "[w]e have recognized that there is a 'debate among the circuits over whether [actions filed in violation of the automatic stay] are void or merely voidable.' We have had 'no occasion to ... forage into the debate ....'" *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) (*quoting Middle Tenn. News. Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 n.6 (7th Cir. 2001).

A recent case from the Southern District of Indiana serves well to set forth the reasoning in this arena. *Richardson v. Trustees of Indiana Univ. (In re Richardson)*, 497 B.R. 546, 551-52 (Bankr. S.D. Ind. 2013) (analyzing the void/voidance split among the circuits and concluding that actions taken in violation of the stay are "invalid"). So well, that the court need not reiterate the discussion here. Suffice it to say that this court agrees with *Richardson*, both in reasoning and in conclusion.

Regardless of whether the commencement of the Dissolution Proceeding is void, voidable or invalid, however, the inescapable conclusion of the preceding discussion is that it must not be permitted to proceed. For that reason, the court will grant the Chapter 7 Trustee's request that the Dissolution Proceeding be dismissed.

D.    Abstention/Remand

In light of the foregoing, the Petitioners' request for abstention or remand need not be considered. Following dismissal of the Dissolution Proceeding, there will be no proceeding to which the request may be held applicable. It will, therefore, be denied as moot.

    The court remains convinced that, in the proper time and format, the state court is the correct forum to hear the actual dissolution of the Trust. But the issues joined in that dissolution are before this court now by way of the Chapter 7 Trustee's investigation and potential claims. Until a resolution in that regard is forthcoming, the automatic stay prevents the Petitioners from seeking redress in another forum.

## CONCLUSION

    For the foregoing reasons, the Stay Enforcement Motion will be GRANTED and the Remand Motion will be DENIED. Separate orders to that effect will be issued concurrent with this Memorandum Decision.

Date: April 10, 2014

_____
Timothy A. Barnes
United States Bankruptcy Judge